UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI SHEEHY,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOKO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | Case No. 1:21-cv-01541-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 17, 18) |

**INTRODUCTION**

Plaintiff Lori Sheehy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 8, 9, 10.)

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's appeal and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and for supplemental security income on March 25, 2019.  AR 197-98, 199-207.[3]  Plaintiff alleged that she became disabled on March 31, 2004, due to post-traumatic stress disorder ("PTSD"), anxiety, depression, and headaches. AR 222.  Plaintiff's applications were denied initially and on reconsideration.  AR 124-28, 120-33, 137-42. Subsequently, Plaintiff requested a hearing before an ALJ.  Following a hearing, ALJ Jane Maccione issued an unfavorable decision on March 2, 2021.  AR 12-27, 32-61.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

### Hearing Testimony

On December 9, 2020, ALJ Maccione held a telephonic hearing.  Plaintiff appeared with her attorney, Jeffrey Milam.  Victoria Rei, an impartial vocational expert, also appeared and testified.  AR 34-35.

In response to questions from the ALJ, Plaintiff testified about certain of her past relevant work, including as a sales representative at a retail store and a scanning job.  AR 39-44.  Plaintiff also testified about her inability to work due to anxiety, explaining that it was to the point that she does not want to leave her house.  AR 45.  She has been taking Xanax for about 13 or 14 years.  She does not take it every day, but will take it if she starts to feel that she is getting an anxiety attack, and it takes it away.  She receives 30 Xanax in a month and will have 8 or 10 left at the end of the month.   AR 46-47.  Plaintiff also testified that she did not graduate high school, which stands in the way of her being able to work.  AR 47-48.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff further testified that she has two children, a seven-year-old and an 18-year-old. With COVID, her seven-year-old, who has ADHD, is at home all the time. Her mom helps her take care of the seven-year-old a couple of times a week when she is not working. AR 48-49.

When asked about her anxiety symptoms, Plaintiff testified that she cannot breathe, her chest feels really tight, and the palms of her hands get sweaty. She has to sit down. She starts stuttering and cannot talk. Her head gets dizzy. In addition to taking Xanax for her anxiety, she uses other techniques, like taking a bath, getting fresh air in the backyard, or being alone, like in the bathroom. AR 49-50. She has been in counseling on and off her whole life, but it hurts to be in counseling. AR 52.

In response to questions from her attorney, Plaintiff testified that when she is in her emotional situations, she has trouble doing things that take concentration or focus. Her family will tell her to slow down when talking. If a supervisor gave her instructions, he would have to repeat himself. Sometimes she is distracted when doing things around the house. Plaintiff reported that her anxiety has worsened, and she does not event want to do things that she enjoys. AR 52-56.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as retail sales and office helper. AR 57-58. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and vocational background with no exertional limitations. She could have occasional interaction with supervisors and co-workers and only brief and superficial interaction with the public. She also would require a workplace with no more than occasional changes to the setting and routine. The VE testified that such an individual could perform Plaintiff's past work as an office helper. AR 58-59.

For the second hypothetical, the ALJ asked the VE to consider an individual who was anticipated to have one partial or full day absent per month for her conditions. The VE testified that this would eliminate all unskilled work. AR 59.

For the third hypothetical, the ALJ asked the VE to consider an individual that would be off task greater than 10% of the workday. The VE testified that such an individual would not be able to maintain competitive employment and it would eliminate all jobs. AR 59-60.

3

**Relevant Allegations and Non-Medical Evidence**

On April 16, 2019, Plaintiff completed a function report. In the report, Plaintiff stated that she gets bad panic attacks. She cannot function when it happens and her PTSD kicks in. AR 232. She takes care of her two sons, taking them to and from school, and she also takes care of her pets or other animals. Her mother will come help her. She has no problems with her personal care, but she puts notes on her fridge for all of her toiletries. She prepares meals and makes dinner at least four times a week. She also does laundry, dishes, vacuums, and mows the lawn. She drives, but cannot go out alone. She shops in stores for food and clothes. She can pay bills and count change. She spends time with others, watching movies with her sons and hanging with her mom. She needs to be reminded to go places and needs someone to accompany her. She has problems getting along with others because she does not like to be around rude people who make fun of her anxiety. Plaintiff indicated that her condition affects her memory, completing tasks, concentration, understanding, following instructions, and getting along with others. She can pay attention for just a couple of seconds and does not finish what she starts. She does not handle stress or changes in routine well. She worries people are going to hurt her and her kids. Plaintiff explained that she was kidnapped and raped when she was 17, and ever since she lives in fear, depression, and anxiety. Plaintiff reiterated that she lives in panic and constant fear. AR 232-39.

Plaintiff's mother also completed a Function Report, which detailed similar allegations regarding Plaintiff's functioning. AR 244-51.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-27. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2019, the application date. AR 18. The ALJ identified the following severe impairments: post-traumatic stress disorder, anxiety, and depression. AR 18-19. The ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 19-23.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is able to have occasional interaction with supervisors and co-workers, only brief and superficial interaction with the public, and she requires a workplace with no more than occasional changes to the setting and routine. AR 23-26. The ALJ found that with this RFC, Plaintiff could perform her past relevant work as an office helper. AR 26-27. The ALJ therefore concluded that Plaintiff had not been under a disability from March 25, 2019, through the date of the decision. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has

lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred in the evaluation of her subjective testimony and in assessing the medical opinions of Dr. Charles DeBattista and Dr. Sneha Raghunath. Plaintiff also appears to contend that the ALJ erred by denying Plaintiff's request to subpoena her treatment records pursuant to the Victim Witness Program.

**A. Subjective Testimony and Reports**

Plaintiff first argues that the ALJ erroneously rejected her subjective testimony. (Doc. 17 at p. 11.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004); SSR 16-3p. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 24. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

The Court finds that the ALJ provided specific, clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ determined that the degree of mental limitation alleged by Plaintiff was not entirely consistent with the longitudinal treatment evidence. AR 24. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. Here, the ALJ considered that Plaintiff's treatment record included numerous observations of normal attention and concentration, normal insight and judgment, and normal orientation. The ALJ recognized that Plaintiff had some limitations due to her mental impairments, limiting her to only occasional interaction with supervisors and co-workers and only brief and superficial interaction with the public in light of her difficulties with social interaction and requiring a workplace with no more than occasional changes to the setting and routine. However, the ALJ found that further mental restrictions were not supported. AR 24.

With regard to concentration, the ALJ noted that there were numerous observations by treating providers that Plaintiff had normal concentration, suggesting that "she retained more ability to remember, concentrate, persist, keep pace, understand and engage in other mental activity than alleged." AR 24. The ALJ expressly cited examinations by Plaintiff's own providers that noted normal memory, appropriate mood and affect, normal insight, normal judgment, mental alertness, normal attention span, and normal concentration. AR 24, citing AR 372 ("Alert and oriented to person, place, and time; Mood and affect appropriate for situation; Judgment and insight normal; Normal attention span and concentration."), 383 ("Cooperative; Judgment and insight normal;" "Alert and oriented to person, place, and time; Mood and affect appropriate for situation"), 385 (same), 396 ("Alert and oriented to person, place, and time; Mood and affect appropriate for situation; Judgment and insight normal; Normal attention span and concentration"), 402 (denied anxiety, nervousness, depression, sadness, stress), 405, 407, 410 ("Alert and oriented; Mood and affect appropriate for situation; Judgment and insight normal; Normal attention span and concentration"); *see also* AR 403 ("Alert and oriented to person, place, and time; Mood and affect appropriate for situation; Judgment and insight normal; Normal attention span and concentration"), 406 ("Cooperative; Judgment and insight normal;" "Alert and oriented; Mood and affect appropriate for situation"), 408. The ALJ

reasoned that this evidence suggested that even though Plaintiff experienced symptoms due to her mental disorders, they did not limit her to the extent alleged. AR 24-25.

Plaintiff contends that there is evidence in the record from Plaintiff's treatment providers that do not support the ALJ's findings, such as PA Yeh Ning Johnson's observation in 2019 that Plaintiff's behavior was compulsive and she appeared anxious, and Dr. Raghunath's observation in April 2020 that Plaintiff's thought process was circumstantial, her affect was depressed, and her mood was anxious. (Doc. 19 at p. 3, citing AR 747, 780.) Plaintiff appears to overlook the ALJ's recognition that when the longitudinal record showed abnormal findings on examination, they were mostly transitory. AR 25. The ALJ's determination appears consistent with the numerous observations by treatment providers of normal findings regarding memory, concentration, attention, mood, affect, insight and judgment.

Second, the ALJ determined that despite Plaintiff's mental impairments, she was able to engage in various daily activities that suggested she was not as limited as alleged. AR 24. "While a claimant need not vegetate in a dark room in order to be eligible for benefits," the ALJ may discount evidence of disability "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (emphasis added) (internal quotations and citations omitted). Here, the ALJ considered evidence that Plaintiff was able to feed her dog and other pets, perform self-care, take her children to and from school, prepare meals, clean the dishes, do laundry, vacuum, drive, shop, handle her finances, mow her lawn, and visit her friend's house once a month. AR 24, 232-39, 245-48.

Plaintiff argues that the activities identified by the ALJ are consistent with her allegations that her PTSD and anxiety caused her to avoid social contact, public places, and going out alone because they were performed in her home. (Doc. 17 at p. 11.) Although certain of Plaintiff's activities were solitary activities performed in the home, the ALJ could reasonably conclude that certain other of her activities, such as taking her children to and from school, driving, shopping, and visiting her friend's house, undermined her claims regarding social contact and public places. *Id.* at 1113 (determining ALJ "could reasonably conclude that [claimant's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was

incapable of being around people without suffering from debilitating panic attacks"). Even where a claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* Moreover, the ALJ did not entirely reject Plaintiff's subjective claims related to difficulties with social contact and accounted for a degree of difficulty by limiting Plaintiff to only occasional interaction with supervisors and co-workers and only brief and superficial interaction with the public in light of her difficulties with social interaction and requiring a workplace with no more than occasional changes to the setting and routine. AR 24.

Third, the ALJ considered Plaintiff's own testimony that when she has a panic attack, she takes Xanax, which alleviates her symptoms. AR 24, 46. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff argues that the ALJ's finding is error for two reasons: (1) panic disorder is only one of her impairments and is unrelated to her PTSD; and (2) for her Xanax to work, she would have to recognize that she was about to have a panic attack and take it before the attack started. (Doc. 17 at p. 12.) This argument is not wholly persuasive because there is no dispute Plaintiff testified that Xanax helped with her anxiety attacks, (AR 46), and the record includes evidence intimating that not only was her panic disorder an independent disorder, but it also was related to her PTSD. (AR 719).

Finally, the ALJ discounted Plaintiff's subjective complaints because she had not been psychiatrically hospitalized. AR 24. The Court does not find this to be a clear and convincing reason, standing alone, to discount Plaintiff's subjective complaints. "A claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization." *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017). The Ninth Circuit has held that "[h]ospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment." *Schiaffino v. Saul*, 799 F. App'x. 473, 476 (9th Cir. Jan. 9,

2020).  However, even if this reason for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

For the reasons stated, the Court finds that the ALJ did not commit reversible error in evaluating Plaintiff's subjective complaints.

**B.  Evaluation of Medical Opinions**

Plaintiff contends that the ALJ erred when assessing the medical opinions of Dr. Charles DeBattista and Dr. Sneha Raghunath.  (Doc. 17 at p. 13.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §§ 404.1520c and 416.920c.  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5). Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and

nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2); *Woods*, 32 F.4th at 792. The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

Dr. DeBattista

On June 28, 2019, Dr. DeBattista completed a consultative psychiatric examination. AR 717-19. On mental status examination, Plaintiff made good eye contract, but was tearful at times when talking about anxiety and past trauma. Her thought process was linear and goal directed, but her thought content was notable for intrusive traumatic ideation. Her mood was depressed and anxious and her affect was tearful at times, but was otherwise full range and appropriate to the content of her speech. Plaintiff was alert and oriented and her insight and judgment were intact. Dr. DeBattista diagnosed PTSD and panic disorder, explaining that Plaintiff's history was consistent with PTSD and that the "panic disorder appears however to be not just related to the PTSD but is independent." AR 719. Plaintiff's prognosis was fair, and she would be expected to improve within 6-12 months with active treatment. Dr. DeBattista identified only mild to moderate impairment in Plaintiff's ability to relate and interact with coworker and the public, moderate impairment in her ability to associate with day-to-day work activity, including attendance and safety, and mild to moderate impairment in her ability to accept instructions from supervisors. AR 719.

The ALJ found Dr. DeBattista's opinion "only partially persuasive," reasoning as follows:

> He rates social interactions with supervisors, coworkers and the public as "mildly to moderately" limited, which is useless because it means that it either has little impact or enough impact to warrant work-place restrictions. Furthermore, he does not explain the reasoning for concluding that she is "mildly to moderately" limited. His finding of moderate impairment in the "ability to associate with day-to-day work activity, including attendance and safety" is not explained at all, especially in light of his somewhat inconsistent opinion that her ability to work a full work day/week is not impaired. Moderate impairment in the ability to associate with day-today work activity also is not consistent with the claimant's reported activities of daily living in which she carries out daily tasks of

>taking her children to school, cooking for them, taking care of a dog, driving, manages finances, and cleaning.

AR 25-26.

The Court finds that the ALJ properly considered the factors of supportability and consistency when evaluating the persuasiveness of Dr. DeBattista's opinion. First, the ALJ found the opinion that Plaintiff had mild to moderate impairment interactions not persuasive because Dr. DeBattista failed to explain his reasons for this conclusion. AR 25, 719. The ALJ further noted that a mild to moderate impairment meant either it had little impact or enough to warrant workplace limitations, but this was not instructive. AR 25. The ALJ's reasoning properly invokes the supportability factor. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence.").

Second, the ALJ found that Dr. DeBattista failed to explain the moderate impairment in the ability to associate with day-to-day work activity, including attendance and safety. AR 25. This, too, invokes the supportability factor. The ALJ additionally found the limitation somewhat inconsistent with Dr. DeBattista's further opinion that Plaintiff's ability to work a full work day/week was not impaired. AR 25, 719.

Finally, the ALJ found Dr. DeBattista's moderate impairment limitation in the ability to associate with day-to day work activity inconsistent with Plaintiff's reported activities of daily living, including daily tasks of taking her children to school, cooking for them, taking care of a dog, driving, managing finances, and cleaning. AR 25. This reasoning properly invokes the consistency factor. 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2) (consistency means extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim").

Plaintiff faults the ALJ for failing to articulate why Dr. DeBattista's opinion was not consistent with other medical evidence in the record, such as the opinion of Dr. Raghunath and certain treatment notes from Plaintiff's providers. (Doc. 17 at p. 14.) Plaintiff's argument is not persuasive. It is evident from the record that the ALJ also considered Dr. Raghunath's opinion, but as discussed below, found it unpersuasive for multiple reasons. AR 26. Further, Plaintiff cites nothing that requires the

ALJ to compare the medical opinion of Dr. DeBattista with every other piece of evidence to avoid error.

Dr. Raghunath

On December 22, 2020, Dr. Sneha Raghunath completed a Medical Source Statement, Psychiatric form.  AR 792.  Dr. Raghunath opined that Plaintiff appeared to maintain concentration and attention for simple tasks, but complex tasks.  She has panic attacks when she leaves her house and was "[u]nlikely to withstand stress [and] pressure."  AR 792.  Plaintiff appeared able to understand, remember, and carry out simple one-or-two job instructions, but was "[u]nlikely" to be able to understand, remember and carry out an extensive variety of technical and/or complex job instructions.  She also was "[u]nlikely" to be able to deal with the public.  AR 792.  Dr. Raghunath further indicated "unsure" with regard to Plaintiff's ability to receive and carry out instructions from supervisors and her ability to relate and interact with co-workers.  Dr. Raghunath opined that Plaintiff was likely to miss more than 2-3 weeks per month due to mental issues.  AR 792.

In evaluating the persuasiveness of Dr. Raghunath's opinion, the ALJ reasoned as follows:

> This opinion is not persuasive.  Dr. Raghunath is a physician licensed in California, but located in Charleston, West Virginia (Exhibit 8D, page 16). The medical evidence shows that she has met with the claimant by telehealth over the telephone three times – in April 2020, May 2020, and October 2020 – for a total of forty-six minutes (Exhibit 8F, pages 5, 10-13, 16-19). The American Board of Psychiatry and Neurology does not list Dr. Raghanath as board-certified, and the American Board of Internal Medicine does not list her as board-certified. The opinion is stated in terms of what the claimant is "likely" to do and is "unsure" on several questions. There is very little explanation and it is not consistent with the medical evidence of record. All three chart notes from Dr. Raghunath record intact attention (Exhibit 8F, pages 1-16), and "unremarkable" concentration and memory. Her comment that she "has panic attacks when she leaves her house" is not entirely accurate, as her own chart notes from May 12, 2020 indicate she reported only four panic attacks over the past month, and the claimant testified that medication alleviates them.

AR 26.

The Court finds that the ALJ properly considered the factors of supportability and consistency when evaluating the persuasiveness of Dr. Raghunath.  As to supportability, the ALJ correctly noted that Dr. Raghunath expressed the opinion in terms of what Plaintiff was likely to do, answered "unsure" on several questions, and provided very little explanation.  AR 26.   The ALJ's reasoning

13

properly invokes the supportability factor. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence" ).

As to consistency, the ALJ noted that the opinion was not consistent with the medical evidence of record. AR 26. To support this determination, the ALJ indicated that all three chart notes from Dr. Raghunath recorded intact attention, and "unremarkable" concentration and memory. AR 25, 764-68, 773-77, 779-82. The ALJ also considered that Dr. Raghunath's comment that Plaintiff "has panic attacks when she leaves her house" was not entirely accurate, as her own chart notes from May 12, 2020 indicated that Plaintiff reported only four panic attacks over the past month. AR 26, 774. The ALJ's determination appears to conflate the consistency factor with the supportability factor. With consistency, the ALJ considers the extent which a medical opinion is consistent with the evidence from *other* medical sources and nomedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (emphasis added). Whereas, with supportability, the ALJ considers the extent to which a medical source supports his or her own opinion, and explains the objective medical evidence. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The evidence from Dr. Raghunath's own treatment records speaks to the supportability of the associated medical opinion from Dr. Raghunath, not the consistency of that opinion with evidence from other medical or nonmedical sources. Nevertheless, the ALJ also considered that Dr. Raghunath's opinion was not consistent with Plaintiff's report that her panic attacks were alleviated with medication. AR 26. This portion of the ALJ's evaluation properly invokes the consistency factor, i.e., the extent to which the opinion is consistent with the evidence from nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (emphasis added). While consideration of the consistency factor was minimal, it is apparent from the decision that the ALJ considered that supportability was the critical factor and lacking from Dr. Raghunath's opinion.

Furthermore, in addition to consideration of the consistency and supportability factors, the ALJ considered the relationship with the claimant factor, which includes consideration of the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship. AR 26; 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). The ALJ expressly noted that

Dr. Raghunath only met with Plaintiff by telehealth (over the telephone) three times for a total of forty-six minutes. AR 26, citing AR 777 (Encounter Duration: 10 minutes), 773-75 (Encounter Duration: 8.8 minutes), 779-81 (Encounter Duration: 28 minutes).

Additionally, the ALJ considered whether Dr. Raghunath was a specialist. AR 26. An ALJ is permitted to consider the specialization of a medical source when evaluating the persuasiveness of the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.") In this instance, the ALJ considered that Dr. Raghunath was not listed as board-certified by the American Board of Psychiatry and Neurology or the American Board of Internal Medicine. AR 26.

Based on the above, the Court finds that the ALJ properly evaluated the opinions of Dr. DeBattista and Dr. Raghunath and the evaluation was supported by substantial evidence.

**C.  Subpoena of Records**

Plaintiff suggests that the ALJ's error in denying Plaintiff's hearing request to subpoena her treatment records pursuant to the Victim Witness Program can be corrected on remand. (Doc. 17 at p. 15.)

According to the hearing transcript, the ALJ acknowledged Plaintiff's request for a subpoena for victim witness records, but denied the request at that point. AR 36-37. In so doing, the ALJ indicated that the requested records were usually confidential and not discoverable. The ALJ then queried Plaintiff's counsel as to whether they were protected from disclosure. AR 36. Because Plaintiff's counsel was not certain, the ALJ invited Plaintiff's counsel to brief the issue of whether the records were protected from disclosure. AR 36. There is no indication in the record that Plaintiff's counsel submitted any such briefing in support of the subpoena request. The ALJ also indicated that she was denying the request at that point because it appeared that the psych records at issue would like with the provider, not the Victim Witness Program. AR 37. Given that Plaintiff's counsel did not

submit the invited briefing, nor provide any indication that the requested records were unavailable from a source other than the Victim Witness Program, the Court does not find error.

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and AFFIRMS the agency's determination to deny benefits.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Lori Sheehy.

IT IS SO ORDERED.

Dated:  **August 4, 2023**         /s/ *Barbara A. McAuliffe*         
                                                      UNITED STATES MAGISTRATE JUDGE